UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANSELMO ROMERO SANCHEZ,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.:  25-CV-3136 JLS (JLB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

    Presently before the Court is Petitioner Anselmo Romero Sanchez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1).  Also before the Court is Respondents Christopher LaRose's (Senior Warden, Otay Mesa Detention Center), Pamela Bondi's (U.S. Attorney General), Kristi Noem's (Secretary, U.S. Department of Homeland Security), and Patrick Divver's (ICE San Diego Field Office Director) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 6), and Petitioner's Traverse ("Traverse," ECF No. 7).  On November 24, 2025, the Court granted in part Petitioner's Petition, ordering a bond hearing and requesting supplemental briefing on the pre-detention status of Petitioner's parole.  *See* ECF No. 8 ("Order").  On December 1, 2025, the Parties submitted supplemental briefing on the issue.  *See* ECF Nos. 9, 10.  For

the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is a citizen and national of Mexico with a family in the United States, including his father, siblings, and a twenty-one-year-old U.S. citizen child. Pet. ¶ 26. At an unknown location in 1999, Petitioner entered the United States without being admitted, paroled, or inspected. *Id.* ¶ 25. Petitioner's removal case began when Petitioner filed an asylum application, which was denied and referred to immigration court. ECF No. 9 at 2. On November 8, 2016, Petitioner was placed in removal proceedings under 8 U.S.C. § 1229(a), issued a Notice to Appear, and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i).[1] Ret. at 1. Petitioner was then released from custody. Pet. ¶ 27. Since his release, Petitioner attended his court hearings, periodic check-ins at the ERO office, accumulated no criminal record, and worked as a landscaper. ECF No. 9 at 2; Pet. ¶ 28. On October 14, 2025, Petitioner was called into the ICE ERO for his yearly check-in where "he was detained without explanation." Pet. ¶ 31. Petitioner is currently detained at the Otay Mesa Detention Center. *Id.* ¶ 1. Petitioner claims that he is detained in violation of 8 U.S.C. § 1226(a), the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 33–46.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales,*

---

[1] 8 U.S.C. § 1182(a)(6)(A)(i) designates as inadmissible, and therefore "ineligible to receive visas and ineligible to be admitted to the United States," illegal entrants who are present "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

25-CV-3136 JLS (JLB)

418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).   However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Respondents argue that Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.  Ret. at 10.  Petitioner argues that the summary revocation of his parole and continued detention violates Due Process and the APA.  Pet. at ¶ 2.  In the Court's previous Order, the Court concluded that "Petitioner is not an applicant for admission under § 1225(b) and is entitled to a bond hearing under § 1226(a)."  Order at 8.  However, the Court did not rule on whether there was a Due Process violation based on revocation of Petitioner's parole as there were insufficient facts.  *See* Order at 2 n.2.  After reviewing the supplemental briefing, the Court now has sufficient information to decide the issue.

## I.    Due Process

According to Respondents' Supplemental Briefing, Petitioner was released from DHS custody, but "ICE ERO San Diego does not currently have information or records related to that prior detention and release."  ECF No. 10 at 2.  According to Petitioner's Supplemental Briefing, Petitioner's removal case began when Petitioner filed an asylum application, which was denied and referred to immigration court.  ECF No. 9 at 2.  On November 8, 2016, DHS filed a Notice to Appear in immigration court, but did not detain Petitioner.  *Id.*  Petitioner alleges that this was "effectively a release on his own recognizance."  *Id.*  Since his release, Petitioner attended his court hearings, periodic check-ins at the ERO office, accumulated no criminal record, and worked as a landscaper.  *Id.*; Pet. ¶ 28.  Petitioner argues that this release constitutes a release on his own recognizance,

1  and thus the summary revocation of his release without justification or consideration of his

2  individualized circumstances violates the Due Process Clause.  Pet. ¶ 43–46.  The Court

3  agrees.

4          The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life,

5  liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due

6  Process Clause applies to all 'persons' within the United States, including aliens, whether

7  their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533

8  U.S. 678, 693 (9th Cir. 2001).  "[I]t is well established that the Fifth Amendment entitles

9  aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292,

10  306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the

11  State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127

12  (1990).  "Even individuals who face significant constraints on their liberty or over whose

13  liberty the government wields significant discretion retain a protected interest in their

14  liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July

15  25, 2025) (citations omitted).  Although the initial decision to detain or release an

16  individual may be within the government's discretion, "the government's decision to

17  release an individual from custody creates 'an implicit promise,' upon which that

18  individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the

19  . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

20  "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending

21  removal proceedings, after that individual is released from custody [he] has a protected

22  liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing

23  *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

24          Respondents contend that, as an "applicant for admission" under 8 U.S.C. § 1225,

25  Petitioner is subject to mandatory detention and therefore his alleged statutory and

26  constitutional violations fail.  Ret. at 10.  The Court disagrees.  Not only did the Court

27  previously determine that Petitioner is not an applicant for admission under 8 U.S.C. §

28

1225, Order at 8, but due to Petitioner's release, he has acquired an interest in his freedom.[2] When Petitioner was released from custody, Petitioner was determined to not be a danger to the community or a flight risk and was released on, what appears to be, a release on his own recognizance. Pet. ¶¶ 44–46. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since 1999. *Id.* ¶ 25. Petitioner has complied with all conditions of his release, applied for asylum, and has attended all required ICE check-ins and court hearings. ECF No. 9 at 2. Petitioner has a U.S. citizen child and multiple family members with legal status in the United States. Pet. ¶ 26. Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See*

---

[2] While it is unclear what form of parole or release Petitioner was granted, Respondents do not dispute that Petitioner was released from DHS custody and was attending an ERO check-in appointment at the time of his re-detention. *See generally* Ret.; ECF No. 10. This check-in appointment is consistent with a requirement of release on own recognizance or parole, and the Court will construe his release as such since neither party could obtain the documentation of that prior release. *See* ECF Nos. 9, 10.

25-CV-3136 JLS (JLB)

*Matthews*, 424 U.S. at 335.  Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights.  First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.  Petitioner has an interest in remaining with his family and continuing to work as a landscaper.  *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release was revoked without providing him a reason for revocation or giving him an opportunity to be heard.  Pet. ¶ 44.  Since DHS's initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").  Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has a U.S. citizen child, and is employed. Pet ¶¶ 26–28.  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760.  Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in

fact dangerous or has become a flight risk. . . ." *Id.* Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole. *See generally* Ret. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

### A. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 9. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the

party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

25-CV-3136 JLS (JLB)

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[3] The Parties are **ORDERED** to file a Joint Status Report by <u>December 8, 2025</u>, confirming that Petitioner has been released. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within <u>thirty (30) days</u> of this Order, and Respondents are instructed to file any opposition within <u>fourteen (14) days</u> of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

Dated: December 3, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[3] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

25-CV-3136 JLS (JLB)